IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LOUISE GILBERTSON,

        Plaintiff,

vs.                                No. CIV 99-1065 LH/LFG

ALLIED SIGNAL, INC. and LIFE INSURANCE
OF NORTH AMERICA,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's First Amended Complaint to Recover Damages Pursuant to the Provisions of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* (Docket No. 32), filed June 26, 2000, and Defendants' Motion for Summary Judgment (Docket No. 44), filed November 11, 2000. The Court, having considered the parties' positions as set forth in their memoranda accompanying Defendants' Motion for Summary Judgment and the applicable law, having reviewed the administrative record, and otherwise being fully advised, finds that Defendants' Motion is well taken and will be **granted** and the administrative decision about which Plaintiff complains will be **affirmed**.

**Procedural Background**

Plaintiff appeals Defendants' denial of her application for long-term disability benefits, pursuant to the Employee Retirement Income Security Act (ERISA). Following the Rule 16 scheduling conference, Magistrate Judge Garcia noted that discovery in ERISA cases is relatively limited, that Plaintiff was entitled to receive her entire claims file, together with a copy of the plan,

and that she could explore conflict of interest issues. (*See* Order Assigning Case to Administrative

Track and Staying Discovery (Docket No. 41), filed September 18, 2000.) The parties indicated to

Judge Garcia at the conference that no discovery appeared necessary and that they would proceed

with cross motions for summary judgment. (*See id.*) Only Defendants have filed a motion for

summary judgment.

The Court previously granted Defendant Allied Signal's [sic] Motion to Vacate Trial Setting,

finding that, absent unusual circumstances, of which none were cited by the parties, a bench trial in

matters such as this entails only review of the written record, without live testimony. (*See*

Memorandum Opinion and Order (Docket No. 57), filed June 14, 2001.) The Court subsequently

held a status conference with counsel, at which time neither Plaintiff nor Defendants indicated that

they had anything further to submit for the Court's consideration. Therefore, the Court has

proceeded by conducting a thorough review of the administrative record, in light of the arguments

propounded by the parties in their briefs in support of or opposition to Defendants' Motion for

Summary Judgment.

**Factual Background**

Plaintiff was employed by Defendant AlliedSignal, Inc. (AlliedSignal) as an Administrative

Support Coordinator. Diagnosed with fibromyalgia, she took short term disability leave on April 20,

1998, and filed an Application for Long-Term Disability (LTD) benefits on October 6, 1998. By

letter dated December 12, 1998, Defendant Life Insurance Company of North America (LINA), the

third-party administrator of AlliedSignal's *Salaried Employees Pension Plan of AlliedSignal, Inc.*

*for AlliedSignal Aerospace Employees at the Kansas City Division (Amended and Restated as of*

*January 1, 1993)* (the Plan), denied Plaintiff LTD benefits. She appealed this decision on January

4, 1999, and submitted additional materials to LINA through her attorney, who notified Defendants

of his representation by letter dated February 25, 1999.  LINA reviewed the Appeal on May 7, 1999,

and referred the file for a physician review by Dr. Thomas Franz on May 10, 1999.  Dr. Franz

submitted his Physician Case Review on May 25, 1999, finding that Plaintiff did not meet the criteria

for a diagnosis of fibromyalgia.  Following a staffing session on June 10, 1999, LINA decided to refer

Plaintiff to HealthSouth for an IME/FCE (independent medical examination and functional ability

testing).  This referral was made on June 29, 1999.  By certified letter dated August 17, 1999,

HealthSouth notified Plaintiff that she was scheduled for an appointment on September 9, 1999.

Plaintiff filed this suit on August 25, 1999.  On September 7th her husband canceled the September

9 appointment.  Plaintiff did not respond to subsequent communication from HealthSouth regarding

other appointment settings.  Her attorney informed HealthSouth sometime around the last week of

November 1999 that no further attempts to contact Plaintiff  should be made.

**ERISA**

"ERISA provides 'a panoply of remedial devices' for participants and beneficiaries of benefit

plans."  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989)(quoting *Mass. Mut. Life*

*Ins. Co v. Russell*, 473 U.S. 134, 146 (1985)).  ERISA regulations relating to "Review procedure"

provide in part that

> A plan may establish a limited period within which a claimant must file any request
> for review of a denied claim.  Such time limits must be reasonable and related to the
> nature of the benefit which is the subject of the claim and to other attendant
> circumstances.  In no event may such a period expire less than 60 days after receipt
> by the claimant of written notification of denial of a claim.

Administration and Enforcement Under the Employee Retirement Income Security Act of 1974, 29

C.F.R. § 2560.503-1(g)(3) (1999).  They further direct as to "Decision on review" that

(1)(i)  A decision by an appropriate named fiduciary shall be made promptly, and *shall not ordinarily be made later than 60 days after the plan's receipt of a request for review, unless special circumstances* (such as the need to hold a hearing, if the plan procedure provides for a hearing) require an extension of time for processing, *in which case decision shall be rendered as soon as possible, but not later than 120 days after receipt of a request for review.*

. . . .

(4)  The decision on review shall be furnished to the claimant within the appropriate time described in paragraph (h)(1) of this section.  *If the decision on review is not furnished within such time, the claim shall be deemed denied on review.*

*Id.* at § 2560.503-1(h) (emphasis added).

LINA received Plaintiff's appeal on January 14, 1999.  Thus, according to the federal regulations and corresponding provisions in the Plan, the decision on review should have been made no later than 120 days, or by May 14, 1999.  No decision had been made, however, before Plaintiff filed this suit in August 1999.

**The Plan**

AlliedSignal's Plan provides that

[t]he Plan Administrator shall have the full discretionary authority and power to control and manage all aspects of the Plan, to determine eligibility for Plan benefits, to interpret and construe the terms and provisions of the Plan, to determine questions of fact and law, to direct disbursements, and to adopt rules for the administration of the Plan as it may deem appropriate in accordance with the terms  of the Plan and all applicable laws.  The Plan Administrator may allocate or delegate its responsibilities for the administration of the Plan to others and employ others to carry out or render advice with respect to its responsibilities under the Plan, including discretionary authority to interpret and construe the terms of the Plan, to direct disbursements, and to determine eligibility for Plan benefits.

(Record Ex. 1, Ex. A (Plan) at § 9.5 (AS 061).)  AlliedSignal delegated its authority to grant or deny disability benefits under the Plan to a third-party administrator, Defendant LINA.  (*Id.* Ex. 1 (Decl. of William Norris) at ¶¶ 2, 6.)

The Plan defines "disability" as

any physical or mental condition which, in the judgement of the Plan Administrator, based on evidence satisfactory to the Plan Administrator--

    (a) will prevent the Member from engaging in his normal occupation or a substantially comparable occupation; and

    (b) will prevent the Member, after he has been disabled for two years, from performing any occupation for which he is suited by training and education.

(*Id.*, Plan § 2.10 (AS 011).)   Regarding appeals from denials of claims, the Plan states that:

    (d) [the denial notice shall set forth] an explanation that a full and fair review by the Plan Administrator of the decision denying the claim may be requested by the claimant or his authorized representative by filing with the Plan Administrator, within 60 days after the notice has been received, a written request for the review; and

    (e) if such request is so filed, the claimant or his authorized representative may review pertinent documents and submit issues and comments in writing within the same 60-day period specified in subsection (d) above.

The decision of the Plan Administrator upon review shall be made promptly, and not later than 60 days after the Plan Administrator's receipt of the request for review, unless special circumstances require an extension of time for processing. In such a case the claimant shall be so notified and a decision shall be rendered as soon as possible, but not later than 120 days after receipt of the request for review. . . .

(*Id.* at § 9.6 (AS 062).)   The Plan also provides that

[t]he Plan Administrator may require a Member who is eligible for benefits under this section 5.3 [Disability Benefits] to submit to a medical examination at any time, but no more frequently than once every six months. *If the Member refuses to submit to the examination, disability benefit payments shall cease.*

(*Id.* at § 5.3(d) (AS 033)(emphasis added).)

**Defendants' Motion for Summary Judgment**

Defendants first move for dismissal on grounds that the First Amended Complaint, as pled,

does not state the specific section of ERISA on which the claim is based, erroneously attempts to

state a claim for breach of fiduciary duty, and improperly requests relief not available under ERISA.

In the alternative, Defendants ask the Court to apply ERISA standards of review and relief for

wrongful denial of benefits and grant them summary judgment.   In her Response, Plaintiff

acknowledges that her claims fall under Section 502(a)(1) of ERISA for wrongful denial of long term

benefits and she withdraws her claims for breach of fiduciary duty and punitive damages.

Standard of Review

The parties do not agree on the standard the Court should employ in analyzing this case:

Plaintiff argues that the denial of the disability claim should be reviewed under a *de novo* standard,

while Defendants maintain that the arbitrary and capricious standard should be applied.  Although

ERISA gives beneficiaries the right to judicial review of a denial of benefits, the statute does not

establish the standard of review to be employed by the Court.  *Chambers v. Family Health Plan*, 100

F.3d 818, 824-25 (10th Cir. 1996).  In *Firestone*, the Supreme Court  determined, however, that "a

denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard *unless*

*the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility*

*for benefits or to construe the terms of the plan*."  489 U.S. at 115 (emphasis added).  Thus, under

*Firestone*, a reviewing court must uphold a discretionary decision of an administrator to deny benefits

unless it was arbitrary and capricious.  *Chambers*, 100 F.3d at 825.

Defendants assert and Plaintiff does not dispute that the Plan in this instance gives the

administrator, AlliedSignal, discretionary authority to administer the Plan and that AlliedSignal

delegated its authority to LINA.  Plaintiff does contend, however, that Defendants committed a

statutory violation by not determining her claim by May 14, 1999, thereby requiring a *de novo* review

of Defendants' interpretation of the Plan and any related factual determinations.  She appears to make

two contradictory arguments:   1) that *de novo* review is required when the reasons for a

determination are not identified until long after the denial and 2) that failure to reach a decision means

that no findings were made, allowing the Court to decide the reasonable and necessary issues *de novo*.

Plaintiff's position is without merit.  It is true that Defendants did not meet the time limits for ruling on Plaintiff's appeal.  In fact, LINA apparently had no contact with Plaintiff, her husband, or their attorney after February 16, 1999.[1]  Although the regulations provide that the review is deemed denied if not acted upon within 120 days of receipt of notice of appeal, May 14, 1999, in this case, Plaintiff continued to participate in the appeals process past that date, resubmitting material on June 1st, and she did not file suit until more than three months after the deadline had passed.

Plaintiff relies heavily in her argument on Defendants' failure to meet the decision deadline, but she, herself, acted outside the Plan's time limits.  She had 60 days from the receipt of the initial denial within which both to file her appeal and to submit written issues and comments.  Thus, she should have provided any additional materials on appeal by the middle of February.  Her husband, however, requested an extension of the 60-day period in the notice of appeal letter[2] in order to gather and submit additional documentation.  In its letter dated January 28, 1999, LINA acknowledged Plaintiff's appeal, granted Plaintiff an extension of 30 days from that date to provide any additional material, and also reiterated the correct time limit - that a final decision was due within 60 days of receipt of Plaintiff's request for review, or under special circumstances, within 120 days.  At this point, however, by granting the extension requested by Plaintiff, Defendants had assured that they could not comply with the initial 60-day deadline.  Mr. Gilbertson requested another extension by phone on February 2, 1999.  LINA granted him a further extension to March 31st.  Plaintiff's

---

[1]   HealthSouth, however, did contact Plaintiff on behalf of LINA on August 17th.

[2]   Mr. Gilbertson also stated in his letter that he understood that a decision on the appeal would be made no later than 120 days after he provided LINA with the supplemental information.  If the parties were able to make such an agreement, the decision on appeal might be determined to be due 120 days after Plaintiff's attorney's resubmission of materials in early June, or by early September.  As no party pursues this line of reasoning, neither will the Court.

attorney submitted material on March 25th, April 7th, and June 1st, all outside the Plan's 60-day time frame, and the latter two dates also beyond the March 31st extension deadline.

Contrary to Plaintiff's argument, Defendants did reach an initial decision on her application for LTD benefits in December 1998 and they did not subsequently change their reasoning. Additionally, the cases upon which Plaintiff relies are distinguishable or inapposite.  The court in *Matuszak v. Torrington Co.* applied *de novo* review because defendants abandoned their original reason nearly four years after the initial denial of benefits, adopting an alternative reason in the district court action, thereby violating the ERISA requirement that employee's be provided adequate notice in writing of the specific reasons for any denial to allow adequate preparation for administrative and/or judicial review.  927 F.2d 320, 322-23 & nn.1, 3, 4 (7th Cir. 1991).

*Marolt v. Alliant Techsystems*, 146 F.3d 617 (8th Cir. 1998), actually supports Defendants' position.  After determining that the defendant review board, which had given no rationale for its decision, could not be allowed to provide an "after-the-fact plan interpretation[ ] devised for purposes of litigation," but would be held to the reasoning of the initial decision maker, the *Marolt* court reviewed *de novo* the district court's application of the deferential standard of review and affirmed the lower court's finding of abuse of discretion.  146 F.3d at 619-21.

In *Counts v. Kissack Water and Oil Service, Inc.* the Tenth Circuit found that defendant had not met the statutory requirements to amend its retirement plan and could not be "deemed to have achieved operational compliance" with the statute through "mere inaction." 986 F.2d 1322, 1324-25 (1993).  As the administrator had the power to interpret the plan, however, the arbitrary and capricious standard of review  was applied by the district court to the administrator's refusal to pay

plaintiff a lump sum benefit and the appellate court reviewed the district court's determination *de novo*.

In *Mansker v. TMG Life Insurance Co.* the defendant wrongfully denied medical coverage and refused to address whether the expenses incurred were medically necessary and reasonable, despite having been given the opportunity to do so. 927 F.2d 320, 1327-28 (7th Cir. 1991). Therefore, after affirming the district court's grant of summary judgment on the issue of liability, the appellate court also held that the lower court did not abuse its discretion in relying on plaintiff's affidavits and addressing *de novo* the medical necessity, reasonableness, and custom of the submitted expenses. *Id.* at 1328.

Finally, in *Casey v. Uddeholm Corp.*, the plan did not grant the administrator discretion to construe uncertain terms, thus requiring the district court to conduct a *de novo* review of plaintiff's challenge of an adverse interpretation of the language of the plan. 32 F.3d 1094, 1096 (10th Cir. 1994). Additionally, because the administrator found, albeit incorrectly, as a matter of legal interpretation that the injuries for which benefits were sought could not have been sustained accidentally within the meaning of the language of the plan, he made no findings resolving the factual dispute concerning the beneficiary's mental state. Thus, there being no factual findings on that issue, there could be no deferential review and the district court necessarily was free to review the evidence *de novo* at a bench trial. *Id.* at 1098.

Therefore, as the Plan in this case grants Defendant LINA discretion, the Court will apply the arbitrary and capricious standard of review. Under this standard, Defendants' actions are arbitrary and capricious if "based on a 'lack of substantial evidence, mistake of law, [or] bad faith.'" *Counts*, 986 F.2d at 1324 (citing *Winchester v. Prudential Life Ins.*, 975 F.2d 1479, 1483 (10th Cir. 1992)).

Although both the *Counts* and *Winchester* courts also included "conflict of interest" as a basis for finding an action arbitrary and capricious, in *Chambers* the Tenth Circuit held that a conflict of interest is "merely a factor in applying this flexible standard," 100 F.3d at 827-28.  Regardless, there are no allegations of conflict of interest in this case.

Scope of Review

Defendants maintain, and Plaintiff does not appear to dispute, that the Court should consider the evidence before LINA at the time this suit was filed, August 25, 1999.  This appears to be a reasonable approach and is the one the Court will follow.

Analysis

Although the parties engage in some discussion of Plaintiff's exhaustion of administrative remedies, this is a non-issue, as Defendants concede in their reply brief.  Thus, the ultimate question before the Court is:  Were the administrator's actions arbitrary or capricious in denying LTD benefits to Plaintiff; in other words, was there substantial evidence supporting the "deemed denied" decision in August 1999?  *See Sandoval v. Aetna Life and  Cas. Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992)(court not to determine whether Plaintiff was, in its view, disabled).

Plaintiff applied for LTD benefits on October 6, 1998.  The supporting documentation initially considered by LINA included Plaintiff's Application for Long-Term Disability, (Record Ex. 2, Ex. A at GIL 032-33); AlliedSignal Job Analysis Questionnaire, (*id.* at GIL 034-041); AlliedSignal Salaried Classification Description, (*id.* at GIL 042); Job Analysis Questionnaire, (*id.* at GIL 043-046); Plaintiff's treating physician Dr. Robinson's letter of August 14, 1998, (*id.* at GIL 047); Plaintiff's Medical Release for LTD completed by Dr. Robinson, (*id.* at GIL 049); Immediate Supervisor's Work Statement, (*id.* at GIL 051); Dr. Robinson's questionnaire, (*id.* at GIL 060-061);

10

Plaintiff's chiropractor Dr. Bender's records, (*id.* at GIL 068-070); and Dr. Robinson's records, (*id.* at GIL 072-077).

After reviewing this material with the assistance of a medical consultant, Angela Flaherty Miller, LINA Senior Case Manager, wrote Plaintiff on December 9, 1998, regarding her LTD application.  Ms. Flaherty concluded that while the medical documentation did "indicate some symptoms of the diagnosis of fibromyalgia, such as headaches, difficulty sleeping, pain, tenderness and weakness of some joints and muscles, it does not provide a clear understanding of how your condition would cause impairment to your functional level or that these symptoms would render you to be totally disabled." (*Id.* at GIL 083-084.)  Ms. Miller specifically noted that the records indicated that Plaintiff had been experiencing symptoms for about fifteen months before she stopped working; her physical exam was within normal limits; she did not have red, hot or swollen joints; there was no indication of what changed as of March 12, 1998, to render her totally disabled as determined by Dr. Robinson; and Dr. Robinson's and Dr. Bender's list of trigger points were not consistent.  (*Id.* at GIL 084.)  She also observed that the medical office notes indicated Plaintiff experienced some changes and difficulty with medication; had good response to therapy, tai chi and water aerobics; that her chiropractor had gotten her headaches under control; and that Plaintiff was feeling better and sleeping better in July and August.  (*Id.*)   Finally, she concluded that the office notes and test results did not address or provide supportive documentation of Plaintiff's inability to perform her occupation; there was no indication of Plaintiff's abilities, restrictions, and limitations and how her condition affected her ability to work; the treating providers had not addressed Plaintiff's functional capacity and their records did not provide that she was incapacitated to the degree that she would be prevented from performing her occupation.  (*Id.*)  Ms. Miller then informed Plaintiff that for reconsideration of her

claim she should submit medical evidence, including, but not limited to office notes; test results with

positive findings precluding return to work; an outline or picture of existing trigger points; narrative

reports outlining her abilities, restrictions, and limitations, along with medical evidence to support the

narrative; results from functional capacity evaluations; therapy notes and reports; rehabilitation

records and reports; treatment summaries and plans; examples of how her activities of daily living

were restricted or impaired; and other medical evidence, such as records of a rheumatologist, if she

had consulted one as Dr. Robinson had recommended she do in August 1998.  (*Id.*)

Plaintiff takes issue of the fact that in the denial letter the LINA representative used a different

definition for "disability" than that found in the Plan and also referred to Plaintiff as not being "*totally*

*disabled.*" (*Id.* at GIL 083-085 (emphasis added).)  Clearly, however, the definition used in the letter,

> Disability means a bodily injury, disease or mental condition, either occupational or
> non-occupational in cause, which for a period of up to two years from the date an
> individual was last actively at work prevents him from performing the duties of his
> normal occupation or substantially comparable duties and which, thereafter, prevents
> him from performing any occupation for which he was suited by his education,
> training or experience[3]

(*Id.* at GIL 083), is essentially equivalent to that stated in the Plan,

> any physical or mental condition which, in the judgement of the Plan Administrator,
> based on evidence satisfactory to the Plan Administrator--
> (a) will prevent the Member from engaging in his normal occupation or a
>     substantially comparable occupation; and
> (b) will prevent the Member, after he has been disabled for two years, from
>     performing any occupation for which he is suited by training and education

---

[3]     This definition apparently is from the "Bendix Plan" materials, (Record, Ex. 2, Ex. A at GIL 099-102), which were provided to Plaintiff on February 26, 1999. The Bendix Plan also stated that "[a]ny . . . applicant for a Disability Pension, may be required by Bendix to submit to a medical examination at any time . . . to determine whether he is eligible for a Disability Pension. . . . If he refuses to submit to such medical examination, no Disability Pension shall be paid until he submits to examination and is determined to be eligible therefor." (*Id.* at GIL 101.)

(*id.*, Ex. 1, Ex. A § 2.10 (AS 011)).   Additionally, Plaintiff makes no showing that use of the terms

"*total* disability" and "*totally* disabled" in any material way affected Defendants' conclusion that the

medical documentation did not support Plaintiff's LTD claim.

Plaintiff submitted additional documents in support of her appeal of the initial denial of her

LTD claim.  These materials included a medical report by Dr. Bender, (Record Ex. 2, Ex. A at GIL

107-108); Plaintiff's husband Neill Gilbertson's statement, (*id.* at GIL 109-110); friend Kathleen

DeHoff's statement, (*id.* at GIL 111); former supervisor and friend Jerry Green's statement, (*id.* GIL

112-113); and Dr. Robinson's letter of March 29, 1999, and records for Plaintiff's appointments on

December 18, 1998, January 6, 1999, and March 5, 1999, (*id.* GIL 115-118).

A Case Manager conducted an Appeal Review on May 7, 1999, and recommended referral

of the matter to a Physician Advisor.  (*See id.* at GIL 119-121.)  Dr. Thomas Franz, M.D. reviewed

Plaintiff's file on May 25, 1999, to determine whether the descriptions provided by the physicians

were reasonable and whether the physical and cognitive limitations and restrictions were appropriate.

(*See id.* at GIL 124-125.)   He found that Plaintiff clearly met the criteria for a diagnosis of

fibromyalgia.  (*Id.* at Gil 124.)  Noting that patients so diagnosed "should typically maintain a

moderate level of physical activity and should be capacity [sic] of light to sedentary duties," however,

Dr. Franz found the restrictions placed on Plaintiff, particularly those of the chiropractor, Dr. Bender,

"really implausible, not only for fibromyalgia but for independent living in the community.  Such a

description would be more characteristic of a person being cared for in a nursing facility."  (*Id.*)  Dr.

Franz also commented that there was "no indication from Dr. Robinson that the patient has a

particularly unusual course of fibromyalgia beyond the fact that she cannot tolerate many medications

usually prescribed to improve sleep." (*Id.*)  Therefore, Dr. Franz found, "based on the documentation

of fibromyalgia alone it is reasonable to expect that the patient would be limited to light to sedentary

duties and that she would benefit from a routine exercise program." (*Id.*)  He concluded his report

by stating that he would reassess his opinion of Plaintiff's documented work capacity if additional

medical information, "such as undiagnosed severe collagen vascular disease or significant psychiatric

problems such as major depression with somata form feature," were to come to light.  (*Id.* at GIL

123.)

Having reviewed the record in this matter, the Court finds that Defendants' decision to deny

LTD benefits to Plaintiff was not arbitrary or capricious.  The medical evidence Plaintiff originally

submitted was ambiguous and, in some respects, even contradictory.  In her letter dated August 14,

1998, to the AlliedSignal Medical Department, Dr. Robinson reported that Plaintiff was improving

and that her progress had been "slow but steady."  (*Id.* at GIL 047.)  Dr. Robinson also stated in the

Attending Physician's Statement dated October 7, 1998, that Plaintiff could return to her job with the

modification of "part-time employment."  (*Id.* at GIL 049.)  Additionally, in a subsequent report

dated November 2, 1998, Dr. Robinson observed that the only abnormalities on Plaintiff's clinical

examination were the trigger points, (*id.* at GIL 061 ¶ 12), but she and Dr. Bender submitted

inconsistent information concerning the location of Plaintiff's trigger points, (*compare id.* ¶ 4 *with

id.* GIL 068).

Although identified as a point of concern in the denial letter, (*id.* at GIL 084), Plaintiff did not

address the issue of trigger point location in her appeal of the denial of benefits.  She did submit

narratives regarding her condition, but they were not accompanied with medical evidence, such as

test results with positive findings, that precluded her return to work.  Plaintiff likewise never

submitted functional capacity evaluations, rehabilitation records and reports, or records documenting

consultation with a rheumatologist.  Although Plaintiff's chiropractor Dr. Bender did submit an

additional report, (*see id.* at GIL 107-108), Dr. Franz found the restrictions he described to be

"implausible," (*id.* at GIL 124).  Perhaps most significantly, when Defendants arranged for Plaintiff

to have an IME/FCE examination at an independent facility, as provided in the Plan, Plaintiff declined

to participate; rather, she elected to file this suit, thereby effectively ending the review procedure.

Given the facts and circumstances of the administrative record, the Court finds that there was

substantial evidence supporting Defendants' "deemed denied" decision.

IT IS HEREBY ORDERED  that Defendants' Motion for Summary Judgment (Docket No.

44), filed November 11, 2000, is GRANTED and the administrative decision denying Plaintiff long-

term disability benefits is AFFIRMED.

IT IS FURTHER ORDERED that this action is DISMISSED.

UNITED STATES DISTRICT JUDGE